## Johnston v. State Employes' Retirement Board

Snyder, Miller, Hull & Hull, for plaintiff.

William A. Schnader, Attorney General, and S. M. R. O'Hara, Deputy Attorney General, for defendant.

WICKERSHAM, J., May 17, 1934.—The plaintiff filed her petition alleging that she is the daughter of Robert E. Forster, who was formerly an employe and actuary in the Department of Insurance of the Commonwealth of Pennsylvania. The petition gives the history of her father as such employe, alleging that he was a member of said system; that he made application for superannuation retirement, selecting option two, which provided for an annual payment to his daughter, the petitioner, during life; that he died August 19, 1929; that his application for retirement was approved by the board on October 8, 1929; and that the petitioner received retirement compensation until December 15, 1931, when the former action of the board was revoked and repealed, and the annuity payments cancelled.

Alleging that the plaintiff is without other adequate and specific remedy at law, she prayed the court to issue an alternative writ of mandamus directed to the defendant, commanding that it forthwith authorize and direct its secretary to draw a requisition or requisitions for payment to the petitioner of the sum of $145.95 for each and every month from January 1, 1932, until the further determination of this case, or show cause, if any there be, why it should not so proceed. A photostatic copy of the application for retirement of the plaintiff's father was attached to the petition.

This court granted the writ of alternative mandamus as prayed for, whereupon the defendant filed an answer admitting the allegations in paragraphs 1 to 5 inclusive, 7, 8, 10, 11, 20, 24, and 27, of the petition, and alleging matters of defense as to the allegations in the other paragraphs.

Testimony, oral and documentary, was taken, and from the admitted paragraphs in the answer and the testimony heard, we make the following

### Findings of fact

1. The plaintiff, whose name when a single woman was Cecel H. Forster, and whose name since her marriage is Cecel H. Forster Johnston, is the daughter of Robert E. Forster.

2. Robert E. Forster was born on October 1, 1864, and died on August 19, 1929.

3. On January 1, 1887, Robert E. Forster entered into the employment of the Commonwealth of Pennsylvania and was employed by the Commonwealth for a period of 30 years prior to January 1, 1934, and continuously thereafter until his death.

4. The State Employes' Retirement Board, defendant, is a departmental administrative board in the Department of State of the Commonwealth of Pennsylvania, organized and existing under the provisions of the Act of June 27, 1923, P. L. 858, and of sec. 402, of The Administrative Code of April 9, 1929, P. L. 177.

5. Robert E. Forster was an original member of the State Employes' Retirement Association, organized under the provisions of the Act of June 27, 1923, P. L. 858, and continued to be a member thereof throughout the subsequent period of his employment by the Commonwealth of Pennsylvania.

6. On August 1, 1929, Robert E. Forster was eligible for superannuation retirement under the provisions of said act and on that date he executed an application for superannuation retirement, at which time he was ill and confined to his home at St. Davids, Pa.

7. In his application for superannuation retirement he specified July 29, 1929, as the date when he desired to be retired, and he elected therein to retire under the provisions of option two as provided in section 14(2) of said act.

8. On July 29, 1929, J. Montgomery Forster, a son of Robert E. Forster, consulted Wilmer Johnson, secretary of the State Employes' Retirement Board, at his office in the State Capitol at Harrisburg, Pa., with respect to the retirement of Robert E. Forster and the several plans under which he might retire. Wilmer Johnson, as secretary of the board, procured a blank form of application for superannuation retirement and wrote or caused to be written upon said blank the date July 29, 1929, as the date when the applicant, Robert E. Forster, desired retirement to begin. He then delivered said blank to J. Montgomery Forster. Wilmer Johnson, secretary of the board, knew at the time he inserted said date and delivered said application that Robert E. Forster was ill at his home in St. Davids and that said application would not be signed by him and returned to the board until after July 29, 1929.

9. At the time when J. Montgomery Forster consulted Wilmer Johnson, secretary of the State Employes' Retirement Board, on July 29, 1929, he was not acting and had no authority to act as the agent of Robert E. Forster.

10. At the conclusion of the interview of July 29, 1929, between J. Montgomery Forster and Wilmer Johnson, secretary as aforesaid, Mr. Johnson, acting as secretary of the board, advised Mr. Forster that if Robert E. Forster should file his application for retirement with him as said secretary of the board, he might withdraw said application at any time before it was actually acted upon by the board at its next meeting, to be held on October 8, 1929.

11. On August 1, 1929, Robert E. Forster, being over 60 years of age, completed said application for superannuation retirement and signed the same, and in said application specified July 29, 1929, as the date when he desired his

retirement to begin and his election to retire under the provisions of option two, and named as his beneficiary Cecel H. Forster, the plaintiff herein.

12. The application for superannuation retirement did not set forth any time subsequent to the date of its execution, that is, subsequent to August 1, 1929, when he desired to be retired.

13. The application for superannuation retirement executed by Robert E. Forster was received by the State Employes' Retirement Board on August 3, 1929.

14. Robert E. Forster was taken ill on July 8, 1929, and thereafter did not do any work of any kind for the Insurance Department of Pennsylvania. He was confined to his bed at his home from that date until his death on August 19, 1929.

15. Subsequent to July 29, 1929, the name of Robert E. Forster was carried upon the payroll of the Insurance Department to the end of August 1929.

16. During his illness, a check was drawn by the State Treasurer on August 15, 1929, for the salary of Robert E. Forster for the first half of August, and mailed to him at the Philadelphia office of the Insurance Department. This check came into the hands of his son, J. Montgomery Forster, who deposited it to the credit of Robert E. Forster after the latter's death.

17. The said check was received and deposited without the direction, authority, or knowledge of Robert E. Forster.

18. After his death on August 19, 1929, a check was drawn by the State Treasurer on August 30, 1929, for the salary of Robert E. Forster for the second half of August, and mailed to him at the Philadelphia office of the Insurance Department. This check came into the hands of his son, J. Montgomery Forster, who deposited it to the credit of Robert E. Forster after the latter's death.

19. On September 3, 1929, the State Employes' Retirement Board received from the Insurance Department notice of the death of Robert E. Forster on August 19, 1929.

20. On or about September 3, 1929, the State Employes' Retirement Board received from the Insurance Department notice of changes in the salaried personnel of that department during the month of August 1929, from which notice the board learned that Robert E. Forster's name had remained upon the payroll of the department until the date of his death on August 19, 1929.

21. On September 13, 1929, the State Employes' Retirement Board received from the Insurance Department the service record of Robert E. Forster, from which it appeared that his name had remained upon the payroll of that department and he had been paid his salary during the latter half of August 1929.

22. On October 8, 1929, at the first meeting of the State Employes' Retirement Board subsequent to July 29, 1929, the application for superannuation retirement signed by Robert E. Forster was presented to the board for its action, and the board unanimously directed that the application be approved and that the secretary draw requisitions covering present and future payments.

23. At the time when the State Employes' Retirement Board approved the application of Robert E. Forster, it knew that the date of retirement specified therein was July 29, 1929, that it had been signed by him on August 1, 1929, and was received by it on August 3, 1929; that he had died on August 19, 1929, and that, notwithstanding the filing of his application and his death, his name had remained on the payroll of the Insurance Department and salary checks had been drawn to his order throughout the month of August.

24. On August 3, 1929, Robert E. Forster had done and performed in his lifetime all things necessary to be done and performed by him to make his

retirement effective as of July 29, 1929, or as of August 3, 1929, when the application was filed with the board; and his retirement was effective August 3, 1929.

25. On October 8, 1929, Wilmer Johnson, as secretary of said retirement board, wrote to the plaintiff, advising her that her father's application had been approved and that she would be paid monthly the sum of $145.95; and, pursuant to the action of the board, requisitions were drawn and payments were made regularly each month to the plaintiff in the amount of $145.95, covering the period from September 1929 until January 1932.

26. On December 15, 1931, the State Employes' Retirement Board undertook to revoke, repeal, and cancel the annuity payments then being made to the plaintiff, and since that date has refused to draw any requisitions or to make any annuity payments to the plaintiff, although the plaintiff had demanded that said payments be made.

The questions involved are:

1. Was Robert E. Forster a "State employe" on August 19, 1929, the date of his death?

2. Did Robert E. Forster file with the retirement board an application for superannuation, duly attested, setting forth any time subsequent to the execution of the application when he desired to be retired?

3. May a member of the State Employes' Retirement System be a "State employe" drawing salary and a retired annuitant at one and the same time?

4. Has the secretary of the State Employes' Retirement Board any authority to change an application for superannuation retirement allowance?

5. Has the secretary of the State Employes' Retirement Board authority to substitute his own designation of a date for retirement for superannuation for that of a member who files an application for retirement?

*Discussion*

Our findings of fact make unnecessary an extended discussion of the history of this case.

It appears from the application for superannuation retirement filed by Robert E. Forster on August 1, 1929, that he desired to retire under the provisions of option two, and named as his beneficiary the plaintiff, Cecel H. Forster (now Johnson). At the time of signing the application, he was eligible for superannuation retirement under the provisions of the Act of June 27, 1923, P. L. 858, and at that time he was ill and confined to his bed at his home in St. Davids, Pa. He was taken ill on July 8, 1929, and thereafter did not do any work of any kind for the Insurance Department of Pennsylvania; he was confined to his bed at his home from that time until his death, August 19, 1929.

While it is true that subsequent to July 29, 1929, the name of Robert E. Forster was carried upon the payroll of the Insurance Department to the end of August, and that checks were drawn on August 15th and August 30th for his salary, it appears that the first check was not deposited until after his death, and there is no evidence that he knew said checks on August 15th and August 30th were mailed to him or that he was being carried on the payroll of the Insurance Department of the Commonwealth of Pennsylvania. The checks were deposited by J. Montgomery Forster, his son and executor, after his death. We fail to understand, therefore, so far as Robert E. Forster is concerned, because of his illness, how he could contemplate that he was so carried, or that he is to be considered now, as a matter of law, a State employe at the time of his death or at any time after he made application for superannuation retirement. At the time he made application for retirement, he had devoted 42 years

and 7 months of his life to the service of the Commonwealth, and he was over 60 years of age. We think these facts disclose a complete prima facie right in the plaintiff to receive the annuity throughout her lifetime, and the first question must be answered in the negative.

We are of opinion that neither Robert E. Forster nor the plaintiff, his beneficiary under the application for retirement, can be held responsible for any errors on the part of the Insurance Department of the Commonwealth of Pennsylvania in carrying his name after he had applied for retirement. We cannot follow the contention of the defendant that the application for superannuation retirement was not received or filed with the board but that it was merely lodged with Wilmer Johnson, secretary of the board, and that Johnson was acting as agent for the applicant and not as secretary for the board in receiving and holding it. We quote from the testimony of J. Montgomery Forster:

"My father had been in the Insurance Department since, if my memory is correct, about the year of 1887, and he had a number of friends in connection with the department. One of his friends suggested that I go up to see Colonel Taggart, who at that time was the Insurance Commissioner of this State. I went to see Colonel Taggart on Monday, July 29, 1929. Colonel Taggart spoke to me at some length, inquired as to my father's health, and suggested that I go see Mr. Wilmer Johnson, who at that time was the secretary to the State Employes' Retirement Board. I forgot to say Colonel Taggart told me, he said, 'I think your father ought to retire'. I then went to see Mr. Wilmer Johnson, and Mr. Johnson suggested that my father should retire. We discussed the several plans under which he could retire under the act, as I have since found out, and Mr. Johnson, or his secretary, filled in in typewriting certain of the blanks for retirement."

He further testified, in answer to the question:

"Q. Will you just indicate what was filled out in the secretary's office in type? A. The answer to the question 'Name of department in which employed at present'. The answer 'Insurance Department' was typed in by Mr. Johnson or someone in his office. The answer to the next query, which is 'Name of position'. The word 'actuary' was also written in in Mr. Johnson's office. The query, the second below that, 'Date when applicant desires retirement to begin', which is written in 'July 29, 1929', was written in in Mr. Johnson's office and is typewritten. . . .

"A. I told Mr. Johnson that I did not believe my father would ever be able to return to his official duties, and I didn't know how long he would live, that nobody could tell us that, but that his return was extremely unlikely, if not entirely hopeless. . . .

"A. Following that I took the application to Philadelphia, to my father's home, I explained the circumstances to him, I told him that Colonel Taggart felt that he should retire, I told him that his retirement application would not come up before the retirement board before October, I told him that because Mr. Wilmer Johnson told me that. I discussed retiring with him and he signed it in my presence and I witnessed his signature, if my memory is correct. I then got the nurse who was in attendance to witness the signature also, and then I mailed it in, the date of my letter I have just forgotten, but it appears I believe in the pleadings."

He also admitted that he told his father that should his condition improve to such an extent that he could return to his work, "he could disregard the enclosed". His father did not know what the witness was doing in receiving and depositing the checks; at the time the checks were received "he could not possibly understand any kind of a business transaction."

It appears further that the application was received by the board on August 3, 1929. There is no evidence that at the time the application was prepared J. Montgomery Forster had authority to act as agent for his father, and he certainly had no authority to constitute or appoint Wilmer Johnson, secretary of the board, agent for his father. Johnson was acting as secretary of the board and was its lawfully constituted agent to give such information as he could to interested persons respecting the operation of the retirement system. It appears he advised Mr. J. Montgomery Forster that the next meeting of the board would be on October 8, 1929, and that if the applicant changed his mind and desired to do so he could withdraw the application before the board acted upon it. The Commonwealth contends this was bad advice, but how was the applicant for retirement or Mr. J. Montgomery Forster to know that the advice was not good? Wilmer Johnson was the secretary of the board and was familiar with the law relating to retirement, and a pertinent inquiry would be: To whom else should an applicant go for advice other than to the secretary of the board? If the advice was bad, which is not conceded, the defendant cannot be heard now to defend its revocation of the order of October 8, 1929, because its secretary wrongfully advised the son of the applicant as to the effect of his application for retirement; and the Commonwealth is not hurt by the advice because the applicant did not attempt to act on it. If either party must suffer by reason of the advice of the secretary, we think it must be the party who committed the error.

Section 13 of the Act of June 27, 1923, P. L. 858, provides that any contributor who has reached the superannuation age may retire by superannuation by filing with the retirement board a written statement, duly attested, setting forth at what time subsequent to the execution of said application he or she desires to be retired; and that said application shall retire said contributor at the time so specified or in the discretion of the retirement board, at the end of the year in which the time so specified occurs.

There is a distinction between retirement for disability under section 12 of the act—because of disability he must present an application to the board with evidence of disability, and the retirement board shall retire said contributor on the disability allowance—and under section 13, to which reference has been made, where the application for retirement retires the said contributor, and the filing of the application effects the retirement regardless of whether the board acts or not. So the advice given by Mr. Johnson was clearly wrong, but certainly the plaintiff in this case cannot be affected by such wrongful advice.

It further appears from an examination of the application for retirement that Wilmer Johnson was not acting as agent for the applicant. The application bears on its face the official stamp of the board: "Received August 3, 1929, State Employes' Retirement Board", and the letter of acknowledgment of August 3, 1929, is signed "Wilmer Johnson, secretary".

We are requested to find that the applicant did not fix a date for retirement subsequent to signing the application, as stated in the act. We think this language is merely directory, and constitutes a rule of action for the board. The board, with all the facts before it, approved the application for retirement. We think the date fixed in the application is merely the date at which the applicant's right to his regular salary ceased and his right to retirement began. The secretary of the board himself filled in the date at which the retirement was to begin, at July 29, 1929. He did so on July 29th, at his office in the capitol at Harrisburg, as we have before stated. He knew the facts with regard to the physical condition of the applicant, that he was confined to his bed at his home, and that in all probability the application would not be executed

the same day and could not be filed until afterwards. We think also the board was estopped for the reason that, when the application came before it for approval on October 8, 1929, it knew from the face of the application the date when retirement was to begin was not subsequent to the date of execution. We are of opinion, therefore, that failure of the applicant to specify a date subsequent to the execution of the application cannot deprive him or his beneficiary of the benefits to which they are entitled; and we must answer the second question propounded by the defendant as follows: Robert E. Forster did not set forth any date subsequent to the execution of the application when he desired to be retired, but we regard this, under the facts as they appear upon this record, as unimportant.

The third question involved, as propounded by the Commonwealth, which is "May a member of the State Employes' Retirement System be a 'State employe' drawing salary and a retired annuitant at one and the same time", has been discussed by us in a former part of this opinion. There is no evidence that the applicant knew he was being carried upon the payroll. There is no evidence that he ever knew that salary checks were mailed for him to the Insurance Department's office in Philadelphia; and neither the applicant for retirement nor the plaintiff in this case, as the beneficiary, can be adversely held responsible for mistakes of the Insurance Department of the Commonwealth of Pennsylvania in carrying a sick man who had applied for superannuation retirement upon the salary payroll. The board evidently had this in mind when they fixed September 1, 1929, as the date when annuity payments were to begin.

There does not appear to be any evidence one way or the other that the secretary of the State Employes' Retirement Board had any authority to change an application for superannuation retirement allowance. It does appear from the evidence, as we have before stated, that the said secretary filled in certain blanks of the application for retirement. This matter we have discussed heretofore and concluded that neither the applicant nor the beneficiary in the instant case is responsible adversely for any mistakes made by the secretary of the board. And this answers the fifth question propounded by the defendant.

We fail to find anything in the act of assembly authorizing the board to revoke its order of October 8, 1929. Section 15 of the Act of June 27, 1923, P. L. 858, 71 PS §1745, provides:

"A member's annuity, a State annuity, or a retirement allowance, granted under the provisions of this act, shall be paid in equal monthly instalments, and shall not be increased, decreased, revoked, or repealed except as otherwise provided in this act."

Explanation of the expression "except as otherwise provided in this act" will be found in section 18 of the act, 71 PS §1748, which provides:

"Any person who shall knowingly make any false statement, or shall falsify or permit to be falsified any record or records of this retirement system, in any attempt to defraud such system as a result of such act, shall be guilty of a misdemeanor, and shall be punishable therefor under the laws of the Commonwealth of Pennsylvania. Should any such change in records or any mistake in records result in any member or beneficiary receiving from the retirement system more or less than he or she would have been entitled to receive had the records been correct, then, on the discovery of any such error, the retirement board shall correct such error, and, so far as practicable, shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he or she was correctly entitled shall be paid."

There is nothing in the record to show that either the applicant for retire-

ment or his beneficiary, the plaintiff in this case, violated any provision of this act. It does not appear that any false statements were made to the board by either, or that either the applicant or the beneficiary falsified any record or attempted to defraud the retirement system. If the applicant had done so, it is clear that the board would have the power to correct the effect of such misstatement and to defeat such attempted fraud. Nor do we find any mistake in the records. What the board did on December 15, 1931, was not to make any correction in its records but to revoke and cancel an annuity to which the plaintiff was entitled because its former secretary, Wilmer Johnson, then deceased, had given erroneous advice to J. Montgomery Forster. The retirement system is intended to be a highly beneficial one for faithful and superannuated State employes; to seize upon mere technicalities to defeat the applications of those otherwise entitled, and those who have contributed to the fund for many years would be defeating the very purpose for which the fund was established. For this reason, the statutes should be liberally and beneficially construed.

Whether the board, on October 8, 1929, knew or did not know of the advice given by the secretary to Mr. Forster does not appear from the evidence, nor does it make any difference whether the advice was right or wrong. The board did know all the essential facts in the case. We are of opinion, therefore, that the board was without power to revoke or cancel the annuity on December 15, 1931, and we think that the writ of mandamus in the alternative form issued by this court March 13, 1933, must be made peremptory.

### Conclusions of law

1. By virtue of the provisions of section 5 of the said Act of June 27, 1923, P. L. 858, the defendant possesses the powers and privileges of a corporation, among which are the power and privilege of suing and being sued in its corporate name.

2. Under the provisions of the Act of May 13, 1925, P. L. 664, the Court of Common Pleas of Dauphin County has the power and is required to issue a writ of mandamus, inter alia, to all departmental administrative boards of the State government.

3. In specifying the date of retirement in the application of Robert E. Forster as July 29, 1929, in advising J. Montgomery Forster that said application, if filed, could be withdrawn before it was acted upon, and in receiving and filing the application after it was signed, Wilmer Johnson was acting as the agent of the State Employes' Retirement Board, and not as the agent of Robert E. Forster, J. Montgomery Forster, or Cecel H. Forster Johnston.

4. The fact that the application of Robert E. Forster was signed on August 1, 1929, and filed with the board on August 3, 1929, but specified July 29, 1929, as the date when the applicant desired retirement to begin did not render the application invalid or ineffective.

5. On August 3, 1929, Robert E. Forster had done and performed in his lifetime all things necessary to be done by him to make his retirement effective as of July 29, 1929, or as of August 3, 1929, when the application was filed with the board; and his retirement was effective August 3, 1929.

6. If the advice which was given by Wilmer Johnson, secretary of the board, to J. Montgomery Forster, that his father's application when filed could be withdrawn at any time, was erroneous, the fact that he gave such advice, or the fact that Robert E. Forster relied upon it, could not prejudice the rights of Robert E. Forster or the plaintiff to receive the superannuation retirement benefits.

7. The fact that the name of Robert E. Forster was carried upon the pay-

roll of the Insurance Department after August 3, 1929, and even after his death, cannot prejudice the right of the plaintiff to receive the annuity applied for.

8. The receipt and deposit of salary checks of Robert E. Forster by J. Montgomery Forster, after the former's death, could not prejudice the right of the plaintiff to receive the annuity applied for.

9. Under the facts and the law, the State Employes' Retirement Board had no right or authority to cancel or revoke the annuity of the plaintiff.

10. The plaintiff is entitled to receive from the defendant, and the defendant is obligated to pay to the plaintiff, an annuity of $145.95 for each and every month from January 1, 1932, until her death.

11. It is the duty of the defendant to authorize and direct its secretary or other executive officer, and their successors from time to time, to draw proper requisitions for the payment to the plaintiff of the sum of $145.95 for each and every month from January 1, 1932, when the annuity payments were discontinued, until the death of the plaintiff, and a writ of peremptory mandamus should issue requiring the defendant so to do.

### Order

And now, May 17, 1934, it is ordered, directed, and decreed that the writ of alternative mandamus issued by this court March 13, 1933, is hereby made peremptory.

It is hereby ordered, adjudged, and decreed that the State Employes' Retirement Board shall forthwith authorize and direct its secretary or other executive officer to draw a requisition or requisitions for the payment to the plaintiff of the sum of $145.95 for each and every month from January 1, 1932; and we further direct the said secretary or other executive officer to draw like requisitions for the payment to the plaintiff of a like sum of money for each and every month from the date of this order until the death of the plaintiff.

From Homer L. Kreider, Harrisburg, Pa.